UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

PARRIS DESUZE,

                Defendant.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**
15-CR-0287-4 (WFK)

IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 0 6 2019 ★
BROOKLYN OFFICE

**WILLIAM F. KUNTZ, II, United States District Judge:**

On June 12, 2018, Parris Desuze pled guilty to Count One of the Superseding Indictment. The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Parris Desuze is hereby sentenced to 210 months of incarceration, 3 years of supervised release, and a $100.00 special assessment.

## BACKGROUND

On July 15, 2015, the United States filed a 75-count Superseding Indictment against 23 defendants, including Parris Desuze ("Defendant"). *See* Superseding Indictment, ECF No. 48. On June 12, 2018, Defendant pled guilty to Count One of the Superseding Indictment, charging Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d), and admitted as racketeering acts his participation in: (1) conspiring to distribute cocaine base, as alleged in Racketeering Act 2; and (2) conspiring to murder John Doe #5 and John Doe #6, as alleged in Racketeering Act 66. *See* Plea Agreement ¶ 1, ECF No. 551.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

**I.    Legal Standard**

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines

sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]" *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant, now 31 years old, was born on July 18, 1988 in Brooklyn, New York. Presentence Investigation Report ("PSR") ¶ 87, ECF No. 726. Defendant is the sole child born to the consensual union of David Desuze and Leticia Cumberbatch. *Id.* Defendant's father resides in Panama, where he is employed in sanitation. *Id.* Defendant's mother resides in Brooklyn, New York, where she is employed as a teacher's aide. *Id.* Both of Defendant's parents are aware of his arrest and remain supportive. *Id.* Defendant has one maternal half-

2

sibling, who resides in Brooklyn, New York, and five paternal half-siblings. *Id.* ¶ 89.
Defendant's younger siblings live in Panama. *Id.* Defendant's older siblings, who live in New York and North Carolina, are aware of his arrest and remain supportive. *Id.*

Defendant was raised in an intact, lower-income home until approximately age eight, when Defendant's father was arrested and ultimately deported. *Id.* ¶¶ 87, 90. Defendant described his childhood as "alright," explaining that his father was strict and often used corporal punishment. *Id.* ¶ 91. After his father was deported, Defendant did not again have contact with his father until he was 16 years old, when he visited his father in Panama. *Id.* Defendant reported he and his father occasionally speak by telephone, and he visited his father again when he was twenty-two years old. *Id.* Defendant reported he shared a close relationship with his mother and has lived with her at the address of record his entire life, up to the time of his arrest for the instant offense. *Id.* ¶ 93. Defendant's mother advised Defendant may return to the residence upon his release from custody. *Id.*

Defendant is currently housed at the Metropolitan Detention Center ("MDC") in Brooklyn, New York. *Id.* ¶ 97. According to the Bureau of Prisons SENTRY database, Defendant has incurred disciplinary infractions for: interfering with staff; lying or falsifying a statement; being insolent to a staff member; refusing to obey orders; fighting with another inmate; destroying/disposing an item; and giving/accepting money without authorization. *Id.* While at the MDC, Defendant completed his GED on April 4, 2016. *Id.* Defendant has also completed a drug education course and participated in a special housing unit health course. *Id.*

Defendant has one son from his relationship with Desire Stephens. *Id.* ¶ 94. Defendant's relationship with Ms. Stephens ended in 2013 due to irreconcilable differences. *Id.* Defendant's son is now six years old and resides with his mother. *Id.* Prior to his arrest, Defendant co-

3

parented his son with Ms. Stephens, as the child would live with him for weeks at a time at the address of record and with his mother for weeks at a time. *Id.* Presently, Defendant's son spends summer vacation and school holidays with Defendant's mother. *Id.* Defendant's mother also provides financial assistance to Ms. Stephens. *Id.* Ms. Stephens described Defendant as a good person and a "wonderful," "hands on" father. *Id.* ¶ 95. She reported Defendant continued to be involved in their child's life, as the child visits Defendant, and they often speak on the telephone. *Id.*

Defendant has been romantically involved with Rochelle Carter since approximately 2014. *Id.* ¶ 96. Ms. Carter resides in Brooklyn, where she is employed as a home health aide. *Id.*

Defendant advised he is physically healthy. *Id.* ¶ 99. He has, however, been shot on three different occasions. *Id.* ¶¶ 99-101. In 2011, he was hit by a "stray bullet" in the right calf. *Id.* ¶ 99. When he was treated for his wounds at Kings County Hospital in Brooklyn, New York, the doctors were unable to remove fully the bullet. *Id.* Nevertheless, Defendant has suffered no residual effects from this incident. *Id.* In 2013, Defendant was shot in the lower portion of his right leg. *Id.* ¶ 100. He was taken for treatment at Kings County Hospital and has suffered no residual effects from this incident. *Id.* In 2014, Defendant was shot in his neck and left hand, and a bullet grazed his back. *Id.* ¶ 101. Defendant was taken to Kings County Hospital for treatment, where he was hospitalized for three weeks. *Id.* He underwent two surgeries because of his neck injuries. *Id.* He also required a tracheotomy to breathe. *Id.* Defendant continues to experience difficulties breathing from this incident. *Id.* An x-ray taken following Defendant's arrest revealed that bullet fragments remain in his neck. *Id.* Defendant also reported he is left

handed and continues to have "shocking" pains in his left hand. *Id.* Defendant does not currently take any medications. *Id.*

Defendant is mentally healthy and does not have a history of mental health issues. *Id.* ¶ 104. Defendant noted his mother took him for counseling sessions in 1999 for "acting out" in school. *Id.* He advised he attended sessions "on and off for a few months." *Id.* Defendant does, however, have a history of substance abuse. *Id.* ¶¶ 105-07. Prior to Defendant's arrest, Defendant consumed a single alcoholic beverage two times per week. *Id.* ¶ 105. He reported he smoked marijuana "occasionally" from age fourteen to age twenty-five. *Id.* ¶ 106. He estimated that during that time he spent approximately $50 per week on marijuana. *Id.* He denied having a problem with marijuana and ceased using it because he felt it was affecting his appetite. *Id.* Defendant participated in a one-year inpatient drug treatment program in relation to a local offense at Phoenix House in "upstate New York" in 2008. *Id.* ¶ 107. Defendant was "kicked out" of the program for intimidating another patient at the facility; he returned home and completed a one-year outpatient drug treatment program through Treatment Alternatives for a Safer Community ("TASC") in Brooklyn, New York. *Id.* Defendant reported all of his urinalyses during treatment were negative for illicit substances. *Id.*

Defendant attended the ninth grade at Tilden High School and Brooklyn College Academy in Brooklyn from 2003 to 2004 and the tenth grade at W.E.B. Dubois High School in Brooklyn from September 2004 to June 2005. *Id.* ¶ 110. Thereafter, he attended William E. Grady High School in Brooklyn, New York. *Id.* He was later discharged to Island Academy at Rikers Island on March 30, 2007. Afterwards, he enrolled in a dental assistant program, but he was unable to complete the program because it required a fee. *Id.* Defendant advised he had

never maintained gainful employment prior to his incarceration and had been financially supported by his mother. *Id.* ¶¶ 112-13.

Defendant's criminal history includes several past convictions. In 2006, Defendant was adjudicated as a youthful offender for Robbery in the Third Degree in Kings County Supreme Court in Brooklyn, New York and sentenced to five years probation. *Id.* ¶ 77. In 2013, Defendant was sentenced to a one-year conditional discharge and six-month license suspension for a 2007 charge of Criminal Possession of a Controlled Substance in the Seventh Degree in Kings County Supreme Court. *Id.* ¶ 78; *see* Def. Sentencing Mem. ("Def. Mem.") at 6, ECF No. 786. In 2010, Defendant was sentenced to "[n]o further penalty" for False Identification to a Law Enforcement Officer in Municipal Court in Philadelphia, Pennsylvania. PSR ¶ 79.

Defendant was a member of the Outlaw Gangsta Crips ("OGC") and the Shoota Gang ("SG"). PSR ¶¶ 10, 40. The SG was an offshoot of the OGC that included members and associates of the OGC as well as members and associates of other gangs, including the Eight Trey Crips, the Bosses in Business, and the Bloods. *Id.* ¶ 6. Members and associates of the OGC have engaged in drug trafficking, fraud, firearms trafficking, and promoting prostitution, and they have committed acts of violence, including murder, attempted murder, robbery, assault, and other crimes. *Id.* The purposes of the OGC included enriching the gang; promoting and enhancing the gang's prestige, reputation, and position among rival gangs; preserving and protecting the gang's power, territory, and criminal ventures; maintaining fear of the gang in its victims and rivals; and concealing the gang's criminal activity from law enforcement. *Id.* ¶ 8.

With respect to Racketeering Act 2, members of the OGC sold cocaine base in New York, Connecticut, and West Virginia and shared drug suppliers, drug turf, and customers. *See id.* ¶¶ 14-21. For his part, Defendant acquired cocaine base in Brooklyn from co-defendant Cory

Harris, which he then sold and distributed in Connecticut with co-defendants Malik Campbell, Steven Cherenfant, and Conell Brogdon. *Id.* ¶ 16. Defendant worked with co-defendants Campbell, Courtney Coy, and Leonard Barletto to obtain and to distribute cocaine base from multiple suppliers, including co-defendants Harris and Jeffrey Joseph and dealers identified as "Un" and "Ice." *Id.* ¶ 17. Co-defendants Zadek Orgias and Jamar Harry supplied Defendant with cocaine base. *Id.* ¶¶ 20-21. In addition, Defendant controlled a stash house. *Id.* ¶ 18.

With respect to Racketeering Act 66, Defendant conspired with co-defendants Barletto, Coy, Solomon Artis, and Andre Holman to murder John Doe #5 and John Doe #6 on May 12, 2015. *Id.* ¶ 35. Law enforcement officials thwarted the conspiracy by intercepting telephone calls pursuant to a judicially authorized wiretap among Defendant, Artis, Barletto, and Coy, who they arrested before they could carry out the murders. *Id.* ¶¶ 35, 37. The defendants believed John Doe #5, John Doe #6, and a third individual—all of whom were affiliated with the gang Bosses in Business—were responsible for the murder of a member of the OGC named Kareem Mitchell. *Id.* ¶ 36. Artis called Defendant and reported John Doe #5 and John Doe #6 were in the East Flatbush section of Brooklyn. *Id.* ¶ 37. After a series of intercepted phone calls among Defendant, Barletto, and Coy about the locations of the two men, during which the callers confirmed they had guns, law enforcement officers observed Barletto, Coy, and Holman together in a car parked on the block they expected to find the victims. *Id.* After Barletto, Coy, and Holman stepped out of the car and stood around the corner, Barletto, Coy, and Defendant—who was with them—were arrested. *Id.* On May 13, 2015, pursuant to a valid search warrant, law enforcement officials searched the car in which Barletto, Coy, and Holman sat and found three firearms and a quantity of cocaine base. *Id.* ¶ 38. The firearms were located near where each of Holman, Barletto, and Coy had been sitting. *Id.*

## B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

As part of the instant offense, Defendant conspired to kill two individuals in support of a violent and dangerous gang. Any violence that would have transpired would undoubtedly have endangered the community at large. These murders would have been carried out but for the Government's discovery of the conspiracy. Moreover, Defendant's sale of illicit narcotics both provided dangerous and illegal drugs to his community and also helped to fund unlawful gang activity. The Court's sentence recognizes the seriousness of Defendant's offense and punishes Defendant accordingly. It seeks to deter this Defendant from further criminal activity and encourages him to sever his ties to the OGC and the SG. It also seeks to protect the public from Defendant's conduct in the future. More generally, the Court's sentence sends a message to other gang members that a life of crime carries a risk of punishment that outweighs any potential gains.

## C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to Count One of the Superseding Indictment, which charged Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d). Plea Agreement ¶ 1. In

connection with that conspiracy, Defendant admitted as racketeering acts his participation in: (1) conspiring to distribute cocaine base, as alleged in Racketeering Act Two; and (2) conspiring to murder John Doe #5 and John Doe #6, as alleged in Racketeering Act Sixty-Six. *Id.*

Per 18 U.S.C. § 1963(a), Defendant faces a maximum term of imprisonment of 20 years. *See* 18 U.S.C. § 1963(a). The parties all agree the applicable statutory maximum is 20 years. PSR ¶ 120; Def.'s Mar. 1, 2019 Letter, ECF No. 699; Gov't's Mar. 4, 2019 Letter, ECF No. 701.

Defendant also faces a maximum term of supervised release of three years, *id.* § 3583(b)(2); a maximum fine of $250,000.00, *id.* § 3571(b); mandatory restitution in the full amount of each victim's losses as determined by the Court, *see id.* §§ 3663A, 3664; and a special assessment of $100.00, *id.* § 3013. Defendant is statutorily eligible for between one and five years probation because he pled guilty to a Class C felony. *Id.* § 3561(c)(1).

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

The parties dispute the Guidelines offense level applicable to Defendant. Probation maintains the adjusted offense level applicable to Defendant is 32. According to Probation, the appropriate Guideline for this offense is United States Sentencing Guideline ("USSG") § 2E1.1(a)(2), which applies to unlawful conduct relating to racketeer influenced and corrupt organizations and instructs the Court to apply the base offense level applicable to the underlying racketeering activity. PSR ¶ 50. With respect to Racketeering Act 2, Probation applies USSG § 2D1.1(c)(4), which pertains to offenses involving at least 840 grams but less than 2.8 kilograms

of cocaine base and provides a base offense level of 32. *Id.* Probation then adds an additional 2 levels pursuant to USSG § 2D1.1(b)(1) because the instant offense involved the possession of firearms, resulting in an adjusted offense level of 34. *Id.* ¶ 51. With respect to Racketeering Acts 66A and 66B, Probation applies USSG § 2A1.5, which pertains to conspiracy to commit murder and supplies a base offense level of 33 as to each count. *Id.* ¶¶ 56-67.

Probation adds three points to the highest adjusted offense level for a multiple count adjustment pursuant to USSG §§ 3D1.4(a)–(c), assigning one unit to each of Racketeering Acts 2, 66A, and 66B. *Id.* ¶¶ 68-70. This renders a combined adjusted offense level of 37. *Id.* ¶ 71. Probation also believes a two-point reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a), a one-point reduction for Defendant timely notifying the Government of his intention to plead guilty pursuant to USSG § 3E1.1(b), and a two-point reduction for global resolution pursuant to USSG § 5K2.0 are warranted, providing a total adjusted offense level of 32. *Id.* ¶¶ 73-74, 135; Probation Sentence Recommendation at 2, ECF No. 726-1.

Defendant and the Government argue the Court should implement the Guidelines calculation provided in the Plea Agreement, which yields a total offense level of 33. *See* Def. Mem. at 4-6; Gov't Sentencing Mem. ("Gov't Mem.") at 3 & n.2, ECF No. 787. The higher offense level in the Plea Agreement is attributable to a two-level role enhancement pursuant to USSG § 3B1.1(a), which Probation does not believe is warranted. *See* Plea Agreement ¶ 2; PSR ¶ 40 (arguing "there is no information to indicate [Defendant] directed, supervised, or managed anyone in connection with his gang affiliation and this racketeering conspiracy. Consequently, neither a mitigating nor an aggravating role adjustment is warranted."). The one-level disparity between the PSR and the Plea Agreement is also attributable to the PSR's multiple-count

adjustment, which adds two units rather than one for Racketeering Act 66 because it was alleged as a sub-predicated conspiracy to murder two victims. *See id.* ¶¶ 62-71; Plea Agreement ¶ 2.

The parties also dispute the appropriate Criminal History Category in this case. Probation and the Government take the position the applicable criminal history category is II. *See* PSR ¶¶ 80-82; Gov't Mem. at 3 & n.1. According to Probation, Defendant's criminal convictions, discussed *supra*, result in a subtotal criminal history score of 1. PSR ¶ 80. Probation notes Defendant committed the instant offense while under a criminal justice sentence—specifically, while he was on unsupervised probation in connection with the 2007 misdemeanor conviction for which he was sentenced in 2013. *Id.* ¶ 81. Accordingly, Probation argues 2 points must be added pursuant to USSG § 4A1.1(d). *Id.* Thus, the total criminal history score is 3, establishing a criminal history category of II in Probation and the Government's view. USSG Ch. 5, Part A. *Id.* ¶ 82; Gov't Mem. at 3.

Although Defendant appears to concede the correct criminal history category is II per Probation's calculation, he nevertheless argues the criminal history calculated in the Plea Agreement, category I, should apply. *See* Def. Mem at 6-9. As defense counsel explained, the parties failed to consider, at the time of Defendant's plea, the fact that he had reached a disposition on the 2007 charge in 2013, when he was sentenced to a conditional discharge. *Id.* at 6-7. To attribute a category of II to Defendant would overstate his criminal history in Defendant's view. *Id.* Thus, Defendant requests the Court reduce the criminal history category to I, as contemplated by the parties in the Plea Agreement. *Id.* at 8.

Probation calculates an Offense Level of 32 and a Criminal History Category of II, which yields a term of imprisonment of 135 to 168 months of imprisonment. USSG Ch. 5, Part A. Probation argues a sentence of 135 months is appropriate in this case. *See* Probation Sentence

Recommendation at 1-2. The Government calculates an Offense Level of 33 and a Criminal History Category of II, yielding a term of imprisonment of 151 to 188 months. Gov't Mem. at 3. The Government requests an above-Guidelines sentence of 210 months. *Id.* Defendant calculates an Offense Level of 33 and a Criminal History Category of I, resulting in a term of imprisonment of 135 to 168 months of imprisonment. Def. Mem. at 3, 7. Defendant requests a below-Guidelines sentence of 121 months. Def. Mem. at 9.

The Court finds the appropriate total offense level is 33, and the Criminal History Category is II, which yields a guidelines imprisonment range of 151 to 188 months. Under the Guidelines, Defendant may also be sentenced to a term of supervised release of one to three years, *see* USSG § 5D1.2(a)(2) and a fine of between $17,500.00 and $175,000.00, *id.* §§ 5E1.2(c)(3), (h)(1), but Probation notes there is no evidence Defendant has the ability to pay a fine. PSR ¶ 119. Additionally, Defendant is ineligible for probation because the applicable guideline range is in Zone D of the sentencing table. *Id.* § 5B1.1, n.2.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, requiring the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), is not relevant to Defendant's sentencing.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Defendant is one of twenty-three defendants in this case, and the Court will craft a unique sentence for each defendant. For the reasons stated in this

Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor, requiring the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is applicable in Defendant's case, *see id.* § 3663. Since the instant offense occurred after April 24, 1996, restitution is mandatory pursuant to 18 U.S.C. § 3663A and Guideline § 5E1.1(a)(1). No victim impact statements are currently available. PSR ¶ 39. As a result, the specific amounts owed to the individual victims are unknown and restitution cannot be determined with accuracy. *Id.* This Court, per 18 U.S.C. § 3664(d)(5), reserves its right to hold an evidentiary hearing within 90 days after sentencing to determine the specific amount owed to the victims.

## CONCLUSION

A sentence of 210 months of incarceration, 3 years of supervised release (with special conditions), and a $100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2). The Court expressly adopts the factual findings of the Presentence Investigation Report, barring any errors contained therein.

SO ORDERED.

*William F. Kuntz II*

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: September 5, 2019
      Brooklyn, New York